## BROUN et al. v. TEXAS & N. O. R. CO.
(No. 1525.)

Court of Civil Appeals of Texas. Beaumont.
May 2, 1927.

Rehearing Denied May 11, 1927.

1. **Railroads** ☞72(7)—**Deed to railroad in consideration of benefits providing for reversion on failure to maintain road held to convey fee on conditions subsequent.**

Deed to railroad conveying land in consideration of benefits to be derived from reconstruction, providing that if grantee should fail to maintain road in, upon, or adjacent thereto the estate granted should revert, held to convey a fee on conditions subsequent.

2. **Railroads** ☞72(3)—**Deed conveying land to railroad on condition subsequent of use for railroad purposes held complied with; "adjacent to."**

Deed conveying land to railroad for use "for main track, side track, switches and depot buildings," in consideration of benefits to grantors, and providing for reversion if grantee should fail to maintain these portions of railroad "in, upon or adjacent to" block 42, held complied with by keeping main and side track and offices on the land and by placing depot across street from block 42; "adjacent to" meaning near to or neighboring.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adjacent.]

3. **Evidence** ☞25(2)—**It is matter of common knowledge that streets intervene between blocks in town laid out into lots and blocks.**

It is a matter of common knowledge that when towns and cities are laid out into lots and blocks there are always streets intervening.

4. **Railroads** ☞72(1)—**Deed to railroad containing condition subsequent with reversion clause would be construed, in case of doubt, in favor of grantee.**

Deed conveying land to railroad, providing for reversion in case of failure to maintain road "in, upon or adjacent" to certain property, would, in case of doubt as to intention of the parties, be construed most strongly in favor of the grantee.

5. **Railroads** ☞72(7)—**Deed to railroad on condition subsequent in consideration of benefits to adjoining landowners conveyed indefeasible title after railroad purchased grantors' adjacent property.**

Under deed to a railroad on condition that it use premises for railroad purposes and if it should fail to do so the estate granted should revert, in consideration of benefits to be realized by grantors, railroad took indefeasible title when, after improvements had been made, it purchased the grantors' adjacent property.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by Mrs. Seawillow Broun and others against the Texas & New Orleans Railroad Company, in which the defendant filed a cross-action. Judgment for defendant on plaintiffs' action and on its cross-action, and plaintiffs appeal. Affirmed.

Boyles, Brown & Scott, of Houston, for appellants.

F. J. & C. T. Duff, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

O'QUINN, J. Appellants brought this suit to recover an undivided portion of block 42 in the city of Beaumont, Tex. They based their right to recover on the proposition that the land sued for was conveyed by their ancestors to appellee by a deed which granted a determinable fee, and that the event which under the terms of the deed would determine the fee had happened, and that they were, therefore, entitled to recover a certain undivided portion of the land so conveyed by their ancestors.

The appellee answered by general denial, plea of not guilty, the several pleas of 3, 5, 10, and 25 years of limitation, plea of estoppel, and set up a cross-action for the land.

The case was tried before the court on an agreed statement of facts, in addition to which a judgment and two deeds were introduced by appellee and an affidavit by appellants. Upon the pleadings and the evidence the court rendered judgment denying recovery by appellants and granting a recovery to appellee on its cross-action.

The court filed findings of fact and conclusions of law. The findings of fact follow almost verbatim the agreed facts in the record. They are:

"Findings of Fact.

"(1) I find on November 13, 1876, A. R. McLain, Therese S. Long, S. J. Carroll, Julia A. Fletcher and husband, W. A. Fletcher, F. L. Carroll, H. V. Keith and husband, Jno. Keith, Emily M. Corley and husband, J. M. Corley (the Keiths and Corleys acting by W. A. Fletcher, their agent and attorney in fact), Joseph A. Carroll and wife, Martha E. Carroll, and Marietta Simmons (the Carrolls and Marietta Simmons acting through F. L. Carroll, their at-

torney in fact) sold and conveyed to the Texas & New Orleans Railroad Company a portion of block 42, in the town of Beaumont, the property being a strip 50 feet wide on the north side of the center of the main tract and 100 feet wide on the south side of the center of the said main tract, the deed reading as follows:

" 'The State of Texas, County of Jefferson:

" 'Know all men by these presents that we, A. R. McLain, Therese S. Long for herself and as surviving wife of James M. Long, deceased and natural guardian of her minor children, and Julia Fletcher and her husband, William A. Fletcher for himself and as agent for Jno. W. Keith and wife Haseltine V. Keith, James M. Corley and wife, Emily M. Corley and Sarah J. Carroll and her husband, F. D. Carroll, for himself and as agent for Marietta Simmons, Joseph A. Carroll, Mattie E. Carroll, all heirs at law of Davis Long, deceased for and in consideration of the benefits we are to derive by the reconstruction of the Texas & New Orleans Railroad from Orange to Houston, through the town of Beaumont, and the sum of $1.00 to us paid do by these presents grant, bargain, sell and convey unto the Texas & New Orleans Railroad Company of 1874 and their successors or assigns all and singular, of so much of Block 42 of and in the town of Beaumont, as shall embrace a strip of 100 feet in width parallel with the said road on the south side and 50 feet in width on the north side, measuring from center of the main track or so much thereof, as shall be requisite to the use of said company, for their main track, side track, switches and depot buildings thereon, in no event to exceed 100 feet south and 50 feet north as hereinbefore described, and that in the event of the said company, or its successors or legal representatives failing or refusing to maintain and retain said portions of their railroad in, upon or adjacent to said block, or to remove same to any other point without the consent and concurrence of the grantors herein, then in that case, all the estate, right, title and interest hereinbefore described and hereby otherwise vesting in said railroad company is to revert to and vest absolutely in these grantors. To have and to hold the lots, lands and premises above described with the understanding and conditions hereinbefore annexed unto the said Texas & New Orleans Railroad Company of 1874, and their successors or assigns forever, and that the grantors for ourselves and heirs covenant and agree to warrant and forever defend the title to the aforesaid property unto said railroad company, their successors or assigns against the claims of all persons whomsoever claiming or to claim the same or any part thereof.

" 'In witness whereof, we hereunto set our hands the 13th day of November, A. D. 1876.'

"(2) I find that the Texas & New Orleans Railroad Company afterwards obtained a general warranty deed without conditions from the then owner of all block 42 lying north of the line 50 feet north of and parallel with the center of its main line. Immediately following November 13, 1876, said railroad company constructed and has ever since maintained and operated the existing tracks upon and across block 42. At the same time the railroad company constructed its freight and passenger depots on the lands covered by this conveyance above quoted and maintained and used the property with various changes and additions made from time to time until May 4, 1902, when the freight depot was destroyed by fire. As soon as possible the depot was rebuilt, but again destroyed by fire December 8, 1902. Following this last fire a temporary freight depot was constructed and used for a short time about one quarter of a mile west of block 42. In the meantime, a new freight station was built and put in service in the spring of 1904. This new freight station has ever since been maintained, and operated and is at present situated about 300 feet west of block 42 on an adjacent block. This location was selected because the railroad company concluded there was not sufficient room on that part of block 42 owned by the railroad company for the freight station and its necessary appurtenances.

"(3) I find that the growth of the city of Beaumont demanded a larger passenger station than could be maintained and used on the portion of block 42 owned by the railroad company, and accordingly a new passenger station, at which trains could be stopped without blocking the street crossing, was constructed at the exact location of the present passenger station of the Texas & New Orleans Railroad Company, west of block 42 on an adjacent block being put in service in the month of January, 1905, and has ever since been so used. While the building on block 42 was not used as a depot passenger station after January, 1905, it continued to be used as a city freight and passenger office, and as the office of the division freight and passenger agent of the said Texas & New Orleans Railroad Company at Beaumont, Tex., until the summer of 1905, when it was taken down and the present city freight and passenger office, a building 60 by 25.2 feet, was erected and has ever since been used as a city freight and passenger office and as the office of the division freight and passenger agent of the Texas & New Orleans Railroad at Beaumont. There are now no railroad tracks or side tracks as formerly maintained on the tract of land sought to be recovered in this suit, which said tract is a part of the land conveyed to the defendant by the deed dated November 13, 1876, heretofore referred to. The land sought to be recovered in this suit is surrounded by an iron fence with gates or openings therein giving entrance to the building thereon; the part so surrounded by said fence being described by metes and bounds as follows, to wit:

" 'Beginning in the northeast line of said block No. 42 at a point 94 feet southeastward from the northeast corner of said block and measured along said northeast line; thence southeastward along the northeast line of said block 75.4'; thence westward parallel with the main track of the T. & N. O. Railroad Company, 325.85 feet to the southwest line of said block at a point 40.05' southeastward from the most westerly corner of said block and measured along said southwest line; thence northwestward along the southwest line of said block 40.05' to the most westerly corner of said block; thence northeastward along the northwest line of said block, 79.7' to a point 23.8' southward at right angles from the center of

the Texas & New Orleans Railroad Company's main track; thence eastward parallel with and 23.8' southerly from the center of said main track 237.7' to the place of beginning.'

"The map marked Exhibit A attached to the agreed statement of facts is a correct map of block 42 of the city of Beaumont and adjoining property, and that portion outlined in black on said map represents the land involved in this suit.

"(4) I find that at the time of their conveyance dated November 13, 1876, to the Texas & New Orleans Railroad Company, the grantors therein owned all of block 42 lying south of the part conveyed to the Texas & New Orleans Railroad Company and the other property hereafter named in paragraph 19 of the agreed statement of facts. After the execution of their conveyance to the said Texas & New Orleans Railroad Company and before the year 1902, these parties or their heirs sold and conveyed for valuable considerations received by them all of the real estate, including block 42, owned by them at the time of their conveyance aforesaid, excepting that hereinafter set out, and at the time of the said sales the reconstruction of the Texas & New Orleans Railroad Company from Orange to Houston, through the town of Beaumont, had been consummated, and the said railroad and the switches and depot buildings mentioned in the above copied deed had been continuously maintained on the land in controversy.

"(5) I find that the Texas & New Orleans Railroad Company has been in peaceable and adverse possession of all of block 42, covered by previous description, using and enjoying the same and paying the taxes thereto since the 1st day of January, 1905. During the year 1905, one A. R. McLain, one of the grantors in the deed referred to above, instituted a suit against the Texas & New Orleans Railroad Company to recover an undivided one-third of the property conveyed in said deed, and on May 23, 1906, said Texas & New Orleans Railroad Company recovered a judgment against him for the title and possession of said land, from which said judgment no appeal was taken, and which has since become final.

"(6) I find that immediately preceding and on the 13th day of November, 1876, A. R. McLain was the owner of a one-third undivided part of block 42, in the town of Beaumont; the heirs of Davis Long, mentioned in this deed were the owners of another undivided one-third thereof; Therese S. Long was the owner of an undivided one-sixth thereof; and the heirs of J. M. Long were the owners of an undivided one-sixth. Mrs. Therese S. Long is the widow of J. M. Long, deceased and is still living.

"(7) I find that Sidney Long and Mrs. Seawillow Long Broun are the only children and heirs at law of Sidney Long, deceased, and Henry Sidney Fall is the only child and heir of Lillie L. Fall; that Seawillow Long Broun was born April 25, 1898, Sidney Long was born September 1, 1893, and Henry Sidney Fall was born August 5, 1902.

"(8) I find that at the date of the conveyance of November 13, 1876, the children of J. M. Long, owned an undivided three-fourteenths interest in block 42, in the town of Beaumont, of which the land in controversy in this case is a part.

"(9) I find that at the date of the deed heretofore mentioned Sidney A. Long, father of the plaintiff Sidney A. Long and Seawillow Long Broun and Lillie Long Fall, mother of the plaintiff Henry Sidney Fall, being the children of J. M. Long and Therese S. Long and grandchildren of Davis Long, owned an undivided part of block 42 in the town of Beaumont. Their mother, Therese S. Long, conveyed for them and as their natural guardian their undivided interest, title, and portion and part of the land in controversy by virtue of the deed referred to.

"(10) I find that at the date of said deed above mentioned to the Texas & New Orleans Railroad Company, that is, November 13, 1876, the children of J. M. Long, including Sidney A. Long and Lillie Long Fall, owned as heirs of said J. M. Long and of Davis Long, an undivided part of the following lands in and above the said town of Beaumont, Tex., to wit: (1) Twenty-two (22) acres of land out of Noah Tevis survey on Brakes Bayou in Jefferson county, Tex., now a part of Long addition to the city of Beaumont, Tex. (2) Two and four-tenths (2⁴⁄₁₀) acres of land out of James McFaddin labor adjoining the above mentioned twenty-two (22) acres of land. (3) Block forty-two (42) in the town of Beaumont, Tex., including the land in controversy in this cause. (4) Lot five hundred eighty-two (582) in block seven (7) of the town of Beaumont, Tex. (5) Lots five hundred ninety-one (591), five hundred ninety-three (593), five hundred ninety-four (594), five hundred ninety-five (595), five hundred ninety-six (596), and five hundred ninety-eight (598) and five hundred thirty-six (536) and seven hundred thirty-seven (737) in block twenty-three (23) of the town of Beaumont. (6) Four (4) acres of land bought of Patsy Jirou out of James McFaddin Headright survey, now blocks six (6) and seven (7) of Long addition to town of Beaumont. (7) Eleven hundred and seven (1107) acres of land out of J. S. Johnson survey in Jefferson county, Tex.

"(11) I find: That of said above-described property, said lot 582, block 7, was sold by Mrs. Therese Long, by deed of date April 1, A. D. 1878, recorded in volume R, p. 568 of the deed records of Jefferson county, Tex.; said lots in block 23 were sold by deed recorded in volume S, p. 1, of the deed records of Jefferson county, Tex. That on the 26th day of March, A. D. 1892, A. R. McLain, S. A. Long, father of two of the plaintiffs herein, and Lillie Long, mother of one of the plaintiffs herein, and other grantors therein named, made, executed and delivered to Wm. Wiess a deed of conveyance of record in volume 5, p. 326 of the deed records of Jefferson county, Tex., as follows, to wit:

" 'The State of Texas, County of Jefferson:

" 'Know all men by these presents that we, Theresa S. Long, for herself and as surviving wife in community of my deceased husband, James M. Long, and as natural guardian of my child, Lula Long, and Henry Long, Sidney Long, Lillie Long, a feme sole, and Lula Long, and Ida Keith joined per forma by her husband Jno. L. Keith, all heirs of said James M. Long, deceased, and Julia A. Fletcher, joined per forma by her husband and William A. Fletcher for

himself and as executor of the estate of Jno. W. Keith, deceased, Haseltine V. Keith for herself and as surviving wife in community of my deceased husband Jno. W. Keith, all ·of the County of Jefferson, state of Texas, Emily M. Corley, joined per forma by her husband, James M. Corley of Alpha Natchitoches parish, La., Martha E. Carroll, joined per forma by her husband, Joseph A. Carroll of Wiess Bluff, Jasper county, Texas, Sarah J. Carroll joined per forma by her husband, F. L. Carroll of Waco, McLennan county, Texas, the last named being all heirs of Davis Long deceased and A. R. McLain of Jefferson county, Texas, for and in consideration of the sum of one ($1.00) dollar to us in hand paid by William Wiess and the further consideration of our desire to correct the certificate of acknowledgment of a deed heretofore executed and delivered to us to the said William Wiess for a valuable consideration dated September 3, A. D. 1879, and duly recorded in the land records of Jefferson county, Texas, in Land Record Book S, pages 510, 511, 512 and 513, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said William Wiess, of the county of Jefferson, state of Texas, all those certain pieces, parcels or lots of ground composing block forty-two (42) of and in the town of Beaumont, less a strip not to exceed 100 feet in width parallel with the Texas & New Orleans Railroad on the south side and fifty feet in width on the north side of said measuring from the center of main track as described in deed dated November 13, 1876, to said railroad company and of record in Book R, page 200. To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said William Wiess, his heirs and assigns forever and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular and said premises unto the said William Wiess his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through and under us.

" 'Witness our hands at Beaumont, Texas, this 26th day of March, A. D. 1892.'

"That said Theresa S. Long and the heirs of said Davis Long and J. M. Long have made various other deeds of conveyance of the lands originally owned by them out of. the estate of Davis Long and J. M. Long.

"(12) I find that at the date of the filing of this suit, Seawillow Broun and Sidney Long only own, as heirs at law of their ancestors, of the lands above described, lots 2 and 3 in block 4, in the Long addition to the city of Beaumont, and that Henry Sidney Fall had parted with the legal title to the lots owned by him prior to November, 1923.

"(13) I find that Sidney A. Long and Lillie Long Fall, children of J. M. Long and Theresa S. Long, and parents as above described of the plaintiffs in this cause, after becoming adults, acquiesced in the above copied deed of conveyance made by A. R. McLain, Mrs. Theresa S. Long et al. to the railroad company, conveying the land in controversy."

Upon these findings the court concluded, as a matter of law, that at the date of the

institution of the suit the appellee, Texas & New Orleans Railroad Company, had an indefeasible fee-simple title to the land in controversy, and rendered judgment in its favor for the title and possession of same.

Appellants' first proposition is, in substance, that under the agreed statement of facts, followed by the court's findings, appellee acquired only a determinable fee to the land in controversy, and that such fee had determined by reason of the happening of the event which, under the terms of the deed, was to determine the fee, and that appellants being heirs and representatives of the deceased grantors in the deed conveying the land to appellee, they are the owners of the undivided portion of the land conveyed by their said ancestors, grantors, and are entitled to recover, and hence the court erred in rendering judgment against them.

[1] We think the assignment should be overruled, and that the judgment must be affirmed, because:

1. The deed from A. R. McLain and the ancestors of appellants conveying the land in controversy to appellee recites the consideration to be "for and in consideration of the benefits we are to derive by the reconstruction of the Texas & New Orleans Railroad from Orange to Houston, through the town of Beaumont, and the sum of $1.00," and after the conveying clause contains the following: "and that in the event of said company, or its successors or legal representatives failing or refusing to maintain and retain said portions of their railroad in, upon or adjacent to said block, or to remove same to any other point without the consent and concurrence of the grantors herein, then in that case, all the estate, right, title and interest hereinbefore described and hereby otherwise vesting in said Railroad Company is to revert to and vest absolutely in these grantors. To have and to hold the lots, lands and premises above described with the understanding and conditions hereinbefore annexed unto the said Texas & New Orleans Railroad Company of 1874, and their successors or assigns forever" —followed by a general warranty clause. This deed conveyed the fee upon conditions subsequent (Stevens v. Railway Co. [Tex. Com. App.] 212 S. W. 643), and it was insisted by appellee that it had at all times complied with all the conditions contained in the deed. Whether it had done so was a question of fact. The court found that it had done so, the finding being:

' "I find that the Texas & New Orleans Railroad Company afterwards obtained a general warranty deed without conditions from the then owner of all block 42, lying north of the line 50 feet north of and parallel with the center of its main line. Immediately following November 13, 1876, said railroad company constructed and has ever since maintained and operated the existing tracks upon and across block 42, at the same time, the railroad company constructed its

freight and passenger depots, on the lands covered by this conveyance above quoted and maintained and used the property with various changes and additions made from time to time until May 4, 1902, when the freight depot was destroyed by fire. As soon as possible, the depot was rebuilt, but again destroyed by fire December 8, 1902. Following this last fire, a temporary freight depot was constructed and used for a short time about one quarter of a mile west of block 42. In the meantime, a new freight station was built and put in service in the spring of 1904. This new freight station has ever since been maintained and operated and is at present situated about 300 feet west of block 42 on an adjacent block. This location was selected because the railroad company concluded there was not sufficient room on that part of block 42 owned by the railroad company for the freight station and its necessary appurtenances.

"I find that the growth of the city of Beaumont demanded a larger passenger station than could be maintained and used on the portion of block 42 owned by the railroad company, and accordingly a new passenger station, at which trains could be stopped without blocking the street crossing, was constructed at the exact location of the present passenger station of the Texas & New Orleans Railroad Company, west of block 42 on an adjacent block, being put in service in the month of January, 1905, and has ever since been so used. While the building on block 42 was not used as a depot passenger station after January, 1905, it continued to be used as a city freight and passenger office, and as the office of the division freight and passenger agent of the said Texas & New Orleans Railroad Company at Beaumont, Tex., until the summer of 1905, when it was taken down and the present city freight and passenger office, a building 60 by 25.2 feet, was erected and has ever since been used as a city freight and passenger office and as the office of the division freight and passenger agent of the Texas & New Orleans Railroad at Beaumont."

[2] We think the court's finding has ample support in the record. The deed under which appellee claims only required appellee to maintain and retain the portions of the railroad mentioned in deed "in, upon or adjacent to" block 42. The contention of appellants that appellee has failed to comply with the conditions in the deed is based upon the facts: (1) That after about 1905 appellee has maintained its depot, both freight and passenger, off of block 42 on another block across the street from block 42; and (2) that the portion of the land conveyed south of the main track or line now occupied by the city freight and passenger office, and as the office of the division freight and passenger agent of the Texas & New Orleans Railroad at Beaumont (which portion is surrounded by an iron rail and same being the portion here in controversy), is not used for any of the purposes mentioned in the deed, and so has reverted to appellants; while appellee insists that it has, by keeping its main track and side track actually on the land, and by placing its depot on a block adjacent to block 42, and by placing and maintaining its city

freight and passenger office on the railed-in portion of the land, all the while has, and now is, actually and fully complying with all the conditions of the conveyance. The conditions of the deed were that the company should maintain and retain its mentioned improvements "in, upon or adjacent to" the land conveyed. Whether appellee's contention that it has done so should be sustained depends upon the meaning that should be given to the word "adjacent" used in the deed. The word "adjacent" has been variously used in the sense of "abutting," "adjoining," "contiguous," "attached," "beside," "bordering on," "close or nearby," "close or contiguous, but not touching," "near," "close," "in proximity," "neighboring but not necessarily in contact." 1 C. J. 1196; 1 A. & E. Ency. of Law (2d Ed.) 633. In United States v. St. Anthony Railway Company, 192 U. S. 524, 24 S. Ct. 333, 48 L. Ed. 548, where an act granted to certain railroads the right of way through public lands, with the right to take materials for the construction of their lines from the public lands "adjacent" to the line of the road, it was held that lands within two miles of the right of way were adjacent. That which is adjacent may be separated by some intervening object. Baxter v. York Realty Company, 128 App. Div. 79, 112 N. Y. S. 455, 456. A thing is adjacent to another when it lies near or close to it, although it is not in actual contact therewith. Yuba County v. Hayes Mining Co., 141 Cal. 360, 74 P. 1049. The natural and primary meaning of the word "adjacent" is near to, or neighboring. It is not inconsistent with the idea of something intervening, and has been defined as "lying near to but not actually touching," "in the vicinity of neighborhood of." 1 C. J. 1196; 1 A. & E. Ency. of Law (2d Ed.) 633. The term "adjacent" is relative and not one a definite and absolute one, and the exact meaning of the word is determinable principally by the context in which it is used, and the facts of each particular case, or by the subject-matter to which it is applied. Railway v. Institute, 239 Ill. 197, 87 N. E. 933, 939; Bacon v. Railroad, 83 Vt. 528, 77 A. 858, 861. Appellants insist upon an interpretation of the word in the sense of "adjoining." While the words "adjacent" and "adjoining" are sometimes used as synonymous in their ethnological sense, yet strictly speaking there is a difference. That which is adjacent may be separated by some intervening object; that which is adjoining must touch in some part. Baxter v. York Realty Co., 128 App. Div. 79, 112 N. Y. S. 455, 456. According to the more approved definitions, the word "adjoin" or "adjoining" carries with it the idea of actual contact and touch.

. [3, 4] We do not believe that the parties to the deed in question intended that "adjacent" to block 42 should be understood to mean "touching" block 42, for then it would

be adjoining. Furthermore, for the depots to have been located on land adjoining or touching block 42, they would have to be situated on or over a street, for the deed described the land as a portion of block 42 in the town of Beaumont, and it is a matter of common knowledge that when towns and cities are laid out into lots and blocks there are always streets intervening, and for the word "adjacent" to be used in the sense of "adjoining" or "touching" block 42 would have been for the parties to have contracted to block up or obstruct the street at the point of contact, which they did not have the power or right to do. Therefore we think it clear that the parties to the deed used the word "adjacent" in its natural, proper, and common sense, that the portion of the railroad mentioned could be maintained on lands near to block 42, and that the condition is complied with when they are situated on a block across the street from said block 42. However, if it can be said that there is any doubt as to this being the proper construction of the intention of the parties, then the deed must receive that interpretation which is most favorable to the grantee, appellee, and the court did not err in holding appellee had complied with the terms of the conveyance. Stevens v. Railway (Tex. Com. App.) 212 S. W. 639; Railway Co. v. Railroad Commission (Tex. Civ. App.) 275 S. W. 264.

[5] 2. The agreed statement of facts and the findings of fact by the court show that at the time the ancestors of appellants conveyed the land in controversy, November 13, 1876, to the railroad, they owned all of block 42 and certain other property in the town of Beaumont and in additions thereto. After the execution of their said conveyance to the Texas & New Orleans Railroad Company, and prior to the year 1902, they and their heirs sold and conveyed for valuable considerations all of block 42 and practically all of the other property owned by them at the date of the execution of the deed to the railroad. At the date of the selling of their said property, and for many years prior thereto, the reconstruction of the Texas & New Orleans Railroad from Orange to Houston, through the town of Beaumont, had been consummated, and the railroad and the switches and depots mentioned in the deed had been built and continuously maintained on the land in controversy. The deed to the railroad, reciting that the consideration for its execution was "the benefit we are to derive by the reconstruction of the Texas & New Orleans Railroad from Orange to Houston, through the town of Beaumont, and the sum of $1.00," conveyed the fee upon conditions subsequent, and the grantors and their heirs having sold their remaining interest in block 42 and the other property, they were no longer interested in a further compliance with the conditions in the deed,

and the grantee in the deed, the railroad, appellee, took and held an indefeasible title to the land conveyed. The consideration to the grantors was the enhancement in value of their property. The condition in the deed that appellee should maintain the portions of the railroad mentioned should be construed to mean until the grantors had realized their expected benefits from the enhanced value of their said property by reason of the location and maintenance of said portions of said railroad. This they received in full when they sold said property. Maddox v. Adair (Tex. Civ. App.) 66 S. W. 811 (writ refused); Daggett v. City of Fort Worth (Tex. Civ. App.) 177 S. W. 222; Stevens v. Railway (Tex. Com. App.) 212 S. W. 643, 645. When they sold their property they ceased to be concerned, the purpose of the conditions in the deed having been accomplished, which was long prior to the time they claim that appellee had ceased to comply with the conditions in the deed.

Appellants' second proposition is that under the undisputed proof, they are entitled to recover, and therefore the judgment should be reversed and here rendered for them. What we have said above disposes of this assignment, and same is overruled.

No error being shown, the judgment should be affirmed; and it is so ordered.

Affirmed.